UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
GUSTAVO MIRANDA,

                  Petitioner,

                                     MEMORANDUM AND ORDER
    -against-                          98 CV 1490 (ILG)

UNITED STATES OF AMERICA,

                  Respondent.
-----------------------------------------------x
        GLASSER, United States District Judge:

        Petitioner Gustavo Miranda seeks an order pursuant to 28 U.S.C. § 2255 ("Section 2255")

vacating his conviction and sentence for conspiracy to distribute and possess with intent to

distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and distribution and

possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

For the reasons stated below, Mr. Miranda's petition is dismissed.

## BACKGROUND

**1.      Investigation and Arrest**

        On February 13, 1996, agents of the United States Customs Service, having obtained

information that a narcotics and money-laundering operation was being conducted from the

petitioner's residence in Elmhurst, New York, were engaged in surveillance of that location.   At

approximately 11:00 A.M., the agents witnessed the petitioner exit the residence and enter a van

parked on the street nearby.   The agents followed the petitioner as he drove in a

"surveillance-conscious" manner– i.e., frequently checking his rear-view and side mirrors for signs

of surveillance– to the residence of co-defendant Hector Gonzalez in Bayside, New York.

Miranda entered Gonzalez's apartment, where he remained for approximately thirty-five minutes,

and then emerged carrying a box, which he placed in the rear of the van. The petitioner then re-entered the Gonzalez residence, and shortly thereafter, both Miranda and Gonzalez exited the residence. The agents then observed Gonzalez carrying a duffel bag, which he placed in the van as he entered the passenger-side door. Miranda entered the van through the driver's side door, and the Customs agents followed as Miranda and Gonzalez drove to Jackson Heights, New York, parking the van on 35th Avenue between 90th and 91st Streets. Gonzalez exited the van and walked to the corner of 91st Street, while Miranda remained inside the van. Gonzalez remained on the corner of 91st Street for several minutes, then walked back toward the van. On the way, he was met by co-defendant Carlos Pelaez. Gonzalez and Pelaez returned to the van together, and Gonzalez gave the duffel bag to Pelaez. Gonzalez then re-entered the van, and he and Miranda drove away from the scene.

After obtaining the bag from Gonzalez, Pelaez crossed 35th Avenue toward the lobby doors of an apartment building, where he was stopped by the Customs agents. After the agents identified themselves, Pelaez consented to a search and opened the duffel bag, which contained several bricks of cocaine weighing approximately 10 kilograms in total. Pelaez was placed under arrest and the Customs agents advised other agents who were maintaining surveillance on Miranda and Gonzalez to stop the van and place them under arrest as well. After being read their rights, both Miranda and Gonzalez consented to a search of their respective residences. The agents' search of Miranda's residence uncovered no contraband, while the search of Gonzalez's residence uncovered, inter alia, false identification and another bag of cocaine bricks weighing approximately 15 kilograms. In their post-arrest examination, Gonzalez and Pelaez both made statements which Miranda now contends exculpate him from criminal liability: Gonzalez said, in substance, that Miranda was simply giving him a ride and had no knowledge of the nature of the

transaction or the contents of the bag, while Pelaez gave agents a description of the individual he was told to meet that was inconsistent with Miranda's appearance. In his own post-arrest statement, Miranda stated that he did not know Pelaez, and falsely stated that he had picked Gonzalez up on the corner of 223rd Street and Northern Boulevard, attempting to obfuscate the fact that he had driven to Gonzalez's residence, where drugs were subsequently found, and had spent over half an hour in that residence before proceeding with Gonzalez to the meeting with Pelaez.

**2.      Pre-Trial and Trial**

All three defendants were charged with conspiracy and possession with intent to distribute cocaine in violation of the statutory provisions cited above. Gonzalez pleaded guilty to the conspiracy count on April 30, 1996, and was ultimately sentenced by this Court to a term of 87 months' imprisonment to be followed by 5 years of supervised release. Pelaez pleaded guilty to conspiracy on May 21, 1996, and was initially sentenced to a term of imprisonment of 120 months to be followed by a 5-year period of supervised release; however, on December 22, 2000, the Court reduced Pelaez's sentence to time served plus five years of supervised release. On May 14, 1996, the Government filed an information notifying the Court of Miranda's prior felony drug conviction involving cocaine distribution in Ohio. Because of his prior conviction, Miranda faced a 20-year mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A) if convicted of the charges against him.[1]

Notwithstanding the 20-year mandatory minimum sentence that would apply if he were

---

[1]      21 U.S.C. § 841 (b)(1)(A) provides in relevant part that "[i]f any person commits [a] violation [of 21 U.S.C. § 841(a), which prohibits, <u>inter alia</u>, possession with intent to distribute a controlled substance] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment. . . ."

convicted, Mr. Miranda chose to defend himself against the Government's charges at trial. Mr. Miranda's trial, at which he was represented by attorney Scott Brettschneider, took place on June 17-18, 1996. The primary issue at trial was whether Mr. Miranda was aware that the duffel bag that Mr. Gonzalez placed in his van contained cocaine. In support of its case, the Government introduced expert testimony from Agent Robert Devine, who testified that the quantity of cocaine present in the duffel bag would exude a strong odor that would be recognizable to anyone familiar with the drug, and factual testimony from Detective Dennis Pellegrino of the Canton, Ohio, Metropolitan Narcotics Unit, who testified that in 1990, acting in an undercover capacity, he met with Miranda several times and discussed purchasing cocaine from Miranda's New York supplier. Detective Pellegrino also testified that Miranda's co-conspirator in the 1990 case told the detective that Miranda regularly transported drugs from New York to Ohio. At the close of the Government's case, Mr. Brettschneider moved to dismiss the charges pursuant to Federal Rule of Criminal Procedure 29(a), and the Court denied that motion. Mr. Miranda offered no evidence in opposition to the Government's case.

In summation, the Government argued that the circumstantial evidence presented, including telephone records showing contact between Gonzalez and Miranda, Miranda's presence in Gonzalez's apartment and his false statements to the effect that he had picked Gonzalez up on the street rather than at his residence, and Miranda's evident attempt to avoid surveillance while driving to Gonzalez's apartment, established that he was a knowing participant in the conspiracy to distribute cocaine. On the basis of the testimony of Agent Devine and Detective Pellegrino, the Government argued that the duffel bag emitted an odor that would have been recognizable to Miranda as that of cocaine. In response, Mr. Brettschneider emphasized that the search of Mr.

Miranda's residence uncovered no drugs or drug-dealing paraphernalia, and argued that Mr. Miranda had no reason to "go sniffing" Mr. Gonzalez's duffel bag.  (Tr. at 187, <u>quoted in</u> Letter from Assistant United States Attorney Elaine D. Banar, dated June 24, 1998 ("Gov. 6/24/98 Letter"), at 4).  After being excused to deliberate, the jury found Mr. Miranda guilty on both counts later the same day.

**3.      Post-Trial Proceedings and Appeal**

On September 19, 1996, the Court granted Mr. Miranda's motion to discharge Mr. Brettschneider as his counsel.   He was thereafter represented at sentencing and on appeal by Kenneth Wasserman.   After Mr. Miranda was convicted, Gonzalez and Pelaez both signed affidavits attesting to his innocence, in which they asserted that Miranda was not involved in the drug conspiracy and was not aware of the contents of Gonzalez's duffel bag when he drove Gonzalez to the meeting with Pelaez.   Gonzalez also asserted that Agent Devine testified falsely when he stated that cocaine has a strong odor that would be recognizable to anyone familiar with the drug.   On October 3, 1996, Mr. Miranda filed a motion pursuant to Federal Rule of Criminal Procedure 33(a) ("Rule 33") seeking a new trial on the basis of this purported newly discovered evidence of his innocence.   The Court denied this motion on December 3, 1996, concluding that the Gonzalez and Pelaez affidavits were not "newly discovered evidence" within the meaning of Rule 33, and rejected Gonzalez's challenge to Agent Devine's testimony on the basis of "the literally countless cases which belie" Gonzalez's assertion that cocaine is odorless.   <u>United States v. Miranda</u>, 951 F. Supp. 368, 371 (E.D.N.Y. 1996) (Glasser, J.).

Mr. Miranda appeared for sentencing before this Court on February 10, 1997.   The Section 2255 petition asserts that on February 1, 1997, Mr. Wasserman sent a letter to the Court seeking leniency for Mr. Miranda on the basis of his family circumstances, asserting that Mr.

Miranda's three children would be "victimized" if the Court were to impose a lengthy term of incarceration.[2] (Pet. at 10). Mr. Wasserman reminded the Court of Mr. Miranda's family circumstances at the sentencing hearing, but did not argue for a sentencing reduction on the basis of Mr. Miranda's allegedly minimal role in the offense, a reduction to which the petitioner now claims to have been entitled. The Court sentenced Mr. Miranda to a term of incarceration of 240 months, the mandatory minimum sentence applicable under 21 U.S.C. § 841(b)(1)(A), to be followed by a 10-year period of supervised release.

Still represented by Mr. Wasserman, Mr. Miranda appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit. Mr. Miranda raised three arguments on appeal: first, that this Court improperly admitted evidence of his prior cocaine-related conviction pursuant to Federal Rule of Evidence 404(b); second, that the government's assertion in summation that Gonzalez's duffel bag emitted a cocaine odor constituted reversible error; and third, that Mr. Brettschneider ineffectively assisted Mr. Miranda prior to and during trial. The Second Circuit affirmed the conviction, holding that the introduction of the prior conviction was proper and that the prosecutor's comments in summation "were not inconsistent with the evidence." United States v. Gonzalez, 131 F.3d 132, at *2 (2d Cir. 1997) (Table). Regarding the ineffective assistance claims, the Court of Appeals noted that "[t]he usual method of raising this issue is by a collateral attack on the conviction under 28 U.S.C. § 2255 rather than by direct appeal," and found that "Miranda's claims cannot be resolved on the record before us." Id. at *3. The court therefore "decline[d] to address the issue further, and note[d] that this claim would be

_____

[2]        The docket for the underlying criminal action makes no mention of a letter submitted to the Court by Mr. Wasserman on or about February 1, 1997, nor does the Court have a specific recollection of receiving such correspondence.

more properly raised in a Section 2255 petition in the district court, which Miranda is free to bring." Id.

**4.    Mr. Miranda's Pending Section 2255 Petition**

Mr. Miranda filed the present motion, initially pro se, on February 26, 1998.   The case was originally assigned to Judge (now Chief Judge) Dearie, and reassigned to this Court on November 15, 2005.   Mr. Miranda's original petition alleged that he received ineffective assistance from Mr. Brettschneider both prior to and at trial and from Mr. Wasserman at sentencing and on appeal, and identified a number of alleged constitutional defects in the representation provided by both attorneys.   Mr. Miranda's primary points of alleged ineffectiveness against Mr. Brettschneider are his failure to seek a mistrial on the basis of the prosecutor's statement in summation that the duffel bag had a detectable odor recognizable as cocaine and his alleged failure to advise Mr. Miranda of the risks of going to trial, including the 20-year minimum sentence he would face if convicted. He also raises a number of miscellaneous allegations of ineffectiveness against Mr. Brettschneider which clearly lack merit and shall be discussed briefly below.   Mr. Miranda's points of alleged ineffectiveness against Mr. Wasserman are largely based on misstatements of the trial record, and shall likewise be addressed briefly below.

Mr. Miranda subsequently retained counsel, Alexei Schacht, who filed a supplemental memorandum ("Supp. Mem.") in support of Mr. Miranda's petition on March 5, 1999.   The supplemental memorandum focused on two assertions of ineffectiveness, both involving Mr. Brettschneider:   first, that Mr. Brettschneider was ineffective in failing to call Miranda's co-defendants, Gonzalez and Pelaez, to testify on his behalf at trial, or to introduce their prior exculpatory statements in the event that they invoked their Fifth Amendment rights to avoid testifying; and second, that Mr. Brettschneider failed to adequately advise Mr. Miranda of the

consequences of going to trial rather than pursuing a plea agreement with the Government. The supplemental memorandum asserts that Mr. Brettschneider falsely informed Mr. Miranda that he would likely receive a substantial sentence reduction on the basis of his minimal role in the offense and failed to inform him of the 20-year mandatory minimum that would apply if he were convicted.

The allegations contained in Mr. Miranda's supplemental memorandum set off a series of affidavits and counter-affidavits between Miranda and Mr. Brettschneider. On January 18, 2005, the Government submitted a declaration from Mr. Brettschneider, dated December 30, 2004, in which Mr. Brettschneider insisted that he and Miranda had discussed the possibility of calling Gonzalez as a witness, but had decided as a strategic matter to refrain from doing so because Mr. Brettschneider was concerned that the jury would find Gonzalez's testimony that Miranda was not a participant in the drug conspiracy and was not aware of the contents of the duffel bag implausible, and that the Government's cross-examination of Gonzalez "would establish more than just an acquaintance with Miranda." (Declaration of Scott Brettschneider, dated December 30, 2004, ¶ 8). Mr. Brettschneider's declaration asserts that Miranda agreed that the risk of calling Gonzalez to testify outweighed the potential benefit; it does not address the question of why Pelaez was not called or whether Mr. Brettschneider adequately informed Mr. Miranda of the risks involved in going to trial, including the 20-year mandatory minimum sentence. On June 8, 2005, Mr. Miranda submitted an affidavit that did not respond to Mr. Brettschneider's December 30 declaration, but elaborated upon Miranda's claims that Mr. Brettschneider did not adequately advise him as to the risks of going to trial. The relevant portion of Mr. Miranda's affidavit states that

> [n]otwithstanding the fact that I told Mr. Brettschneider that I did not want to

proceed to trial and wanted to resolve the case another way, Mr. Brettschneider assured me that even were I to be convicted after a trial that my sentence would reflect the fact that I was a minor or minimal participant in the crime.

At no time did Mr. Brettschneider explain to me the interplay between the possibility that I receive a mitigating role adjustment and the mandatory minimum sentences in the case.

(Affidavit of Gustavo Miranda, dated June 8, 2005, ¶¶ 4-5.)   Mr. Brettschneider responded to that affidavit on July 7, 2005, in a declaration in which he asserted that the allegations contained in Mr. Miranda's affidavit were "blatantly false."   (Declaration of Scott Brettschneider, dated July 7, 2005, ¶ 3.)   Mr. Brettschneider's declaration stated that although he discussed the dynamics of a sentence reduction for minimal participation in the offense, he never guaranteed Mr. Miranda that he would receive such a reduction, that he "repeatedly" advised Mr. Miranda of the mandatory minimum sentence he would face if convicted at trial, and that he warned Mr. Miranda of the hazards involved in going to trial, including the "slim chance of success."   (Id. ¶¶ 5, 6.) However, according to Mr. Brettschneider, "Mr. Miranda was adamant that he wanted to go to trial" despite these warnings.   (Id. ¶ 4.)   On August 5, 2005, Mr. Miranda submitted an affidavit, dated July 23, 2005, which asserted that Mr. Brettschneider's declaration was itself "blatantly false," and argued that an evidentiary hearing would be necessary to resolve the disputed issues of fact raised in the contradictory affidavits.   (Affidavit of Gustavo Miranda, dated July 23, 2005, ¶ 3.)   Mr. Miranda's affidavit concisely identifies the ultimate issue underlying the pending motion:   "[w]ho is really blatantly false?"   (Id. ¶ 4.)   On December 2, 2005, Mr. Miranda submitted three additional affidavits from himself, his wife Maria Redon, and Lisa DelRio, a Spanish interpreter who accompanied Mrs. Redon to a meeting with Mr. Brettschneider and Mr. Miranda.   All three affidavits assert that Mr. Brettschneider led Mr. Miranda to believe that he would likely be acquitted at trial and that he never informed Mr. Miranda of the 20-year mandatory

minimum that would apply if he were convicted.

Finally, on December 12, 2005, Mr. Brettschneider submitted a lengthy declaration in reply, in which he stated that the 20-year mandatory minimum that Mr. Miranda would face if convicted at trial was "one of the first things we talked about when I discussed the case with him." (Declaration of Scott Brettschneider, dated December 12, 2005, ¶ 12). Mr. Brettschneider's declaration also asserts that he urged Mr. Miranda to consider seeking a plea bargain, but the petitioner refused to do so and became "angry and visibly upset" when Mr. Brettschneider raised the issue. (Id. ¶ 17). Mr. Brettschneider denied telling Miranda that his sentence would be reduced on the basis of a minor or minimal role, but instead insists that he warned Mr. Miranda that his prior drug conviction would "haunt him" at sentencing in the form of a twenty-year mandatory minimum. (Id. ¶ 21).

On October 23, 2007, Mr. Miranda submitted a "Memorandum of Law as to the Sufficiency of the Evidence," which argues that Agent Devine's testimony was erroneous insofar as it suggested that cocaine has an odor detectable to humans, as opposed to trained canines, and that Mr. Miranda's mere presence at the scene of the transaction between Gonzalez and Pelaez is insufficient to establish his criminal liability for conspiracy or possession.

## DISCUSSION

### 1.    The Government's Procedural Defenses

In their first letter in opposition to Mr. Miranda's petition, the Government raised two procedural defenses to some of the claims raised in Mr. Miranda's initial petition. First, the Government argues that Miranda's claims of ineffective assistance based on Mr. Brettschneider's alleged failure to seek a mistrial based on the prosecutor's statements in summation concerning the cocaine odor of the duffel bag and his alleged failure to warn Mr. Miranda of the risks of going to

trial are unreviewable in this proceeding because "Section 2255 may not be employed to relitigate questions which were previously raised and considered on direct appeal." (Gov. 6/24/98 Letter at 6 (quoting <u>Douglas v. United States</u>, 13 F.3d 43, 46 (2d Cir. 1993))). The Government's argument relies on the premise that "the Second Court [<u>sic</u>] of Appeals rejected all of Miranda's claims and affirmed his conviction." (Gov. 6/24/98 Letter at 6.) Contrary to the government's characterization of its ruling, a cursory reading of the Second Circuit's decision reveals that the Court of Appeals did <u>not</u> "reject" Miranda's ineffective assistance claims on direct appeal. To the contrary, as noted above, the court declined to consider those claims and noted that they could be better addressed in a Section 2255 proceeding. <u>See</u> <u>Gonzalez</u>, 131 F.3d 132, at *3. The Second Circuit's opinion therefore quite clearly does not bar this Court's review of Miranda's ineffective assistance claims.

The Government also argues that Miranda's assertions of ineffective assistance regarding Mr. Brettschneider's alleged failure to effectively cross-examine the Government's witnesses regarding Mr. Miranda's knowledge of the cocaine conspiracy and his alleged conflict of interest are procedurally barred from review in this proceeding because they were not raised at trial or on direct appeal. The Government argues that "[w]hen a § 2255 petitioner fails to raise claims of unconstitutional errors at trial or on direct appeal, he is procedurally barred from raising them in a subsequent proceeding and is not entitled to review of the merits of his claims." (Gov. 6/24/98 Letter at 7 (citing <u>Napoli v. United States</u>, 32 F.3d 31, 36-37 (2d Cir. 1994))). The Government's argument may have been a correct statement of Second Circuit law in 1998, but the Supreme Court has subsequently held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."

Massaro v. United States, 538 U.S. 500, 509 (2003); see also Schwamborn v. United States, 492 F. Supp. 2d 155, 161-62 (E.D.N.Y. 2007) (Glasser, J.) (discussing Massaro). Thus, Mr. Miranda's ineffective assistance claims are not waived or procedurally barred, even if he did not raise them on direct appeal.

## 2. Substantive Review of Miranda's Petition

Under the law as articulated by the United States Supreme Court and the Second Circuit, "in order to prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." United States v. Jones, 482 F.3d 60, 60 (2d Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). When evaluating the objective reasonableness of defense counsel's actions, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . [and] every effort [must] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. An informed decision to pursue a litigation strategy, even if that strategy turns out badly for the defendant or seems unwise in retrospect, does not constitute ineffective assistance of counsel so long as it is a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001). To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The principal question facing the Court at this stage of the proceeding is whether Mr. Miranda is entitled to an evidentiary hearing or other further proceedings as to any of the claims

asserted in his Section 2255 petition. Section 2255(b) instructs that

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

Although the district court may summarily dismiss a Section 2255 claim without a hearing only where the files and records of the underlying criminal case conclusively demonstrate that the alleged errors asserted in the Section 2255 petition are patently "bereft of merit," United States v. Chang, 250 F.3d 79, 85 (2d Cir. 2001), the district court "may employ a variety of measures in an effort to avoid the need for an evidentiary hearing." Blackledge v. Allison, 431 U.S. 63, 81 (1977). The Second Circuit has indicated that "in order to warrant an evidentiary hearing in the district court on a first § 2255 petition, the 'application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. . . . Airy generalities, conclusory assertions and hearsay statements will not suffice. . . .'" Haouari v. United States, 510 F.3d 350, 354 (2d Cir. 2007) (quoting United States v. Aiello, 814 F.2d 109, 113 (2d Cir.1987)). In Chang, the Second Circuit held that a district court may supplement the record with affidavits from the petitioner's purportedly ineffective trial counsel in lieu of an evidentiary hearing at which live testimony is taken, and may dismiss the petition if the written submissions demonstrate that the petitioner's claims lack merit. 250 F.3d at 85 (affirming order of this Court dismissing Section 2255 petition where "[a]t the request of the court, the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances concerning appellant's failure to testify," and concluding that "with that submission the record was sufficient to support dismissal of the petition."); see also Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) ("Our precedent disapproves of summary dismissal of petitions where factual issues exists, but it permits a 'middle

road' of deciding disputed facts on the basis of written submissions." (citing <u>Chang</u>, 250 F.3d at 86)).[3]

### a. Mr. Brettschneider's Alleged Ineffectiveness

The principal argument asserted in Mr. Miranda's initial petition is that Mr. Brettschneider acted ineffectively in failing to move for a mistrial on the basis of the prosecution's allegedly improper statement during summation that the duffel bag that Gonzalez placed in the back of Miranda's van emitted an odor that would have been recognizable as cocaine to a person familiar with that drug, as Mr. Miranda undisputedly was.   Mr. Miranda also asserts that he is entitled to a judgment of acquittal on the basis of that statement, which he argues was an effort by the Government to "goad" him into seeking a mistrial purely for the purpose of re-trying its case against him.   Both of these arguments are precluded by the Second Circuit's determination on direct appeal that the prosecution's reference to the cocaine odor emitted by the bag was "not inconsistent with the evidence," and was at worst harmless error.   <u>Miranda</u>, 1997 WL 791514, at *2.   Although the Second Circuit did not rule on Mr. Miranda's assertions of ineffective assistance, it follows <u>a fortiori</u> from the determination that the prosecutor's statements were not improper that Mr. Brettschneider's failure to move for a mistrial on the basis of those statements did not fall below the objective standard of reasonableness articulated in the first <u>Strickland</u> prong. Mr. Miranda also argues that Mr. Brettschneider was ineffective in failing to move for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) at the close of the Government's

---

[3]     These procedures are implemented in the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules").   Section 2255 Rule 7 states that "[i]f the motion is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion,"   which may include "letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge.   Affidavits also may be submitted and considered as part of the record." Section 2255 Rule 8 states that, after having expanded the record in accordance with Section 2255 Rule 7, the judge must review all of the materials in the expanded record "to determine whether an evidentiary hearing is warranted."

case; however, the docket in the underlying criminal case reveals that Mr. Brettschneider <u>did</u> make a Rule 29(a) motion, which was denied by this Court. (<u>See</u> <u>United States v. Gonzalez</u>, 96-CR-211 (ILG), docket entry no. 42 (E.D.N.Y. June 17, 1996)). Finally, Mr. Miranda asserts that Mr. Brettschneider was laboring under a conflict of interest while representing Miranda. During a conference prior to trial, Mr. Brettschneider allegedly said to Miranda, "what do you expect from me. . . . . . [<u>sic</u>] you had the drugs. . . . . . [<u>sic</u>] you drove Gonzalez around. . . . . . . [<u>sic</u>] I'm just a lawyer!" (Pet. at 9.) Assuming arguendo that Mr. Brettschneider did make such a statement, a conflict of interest does not arise simply because defense counsel recognizes the strength of the Government's case and advises his client of that fact.

Two of Mr. Miranda's arguments require further discussion: first, that Mr. Brettschneider's failure to call Gonzalez and Pelaez to testify in Mr. Miranda's defense, or to seek to introduce their post-arrest statements, was a matter of negligence rather than trial strategy; and second, that Mr. Brettschneider improperly forced Mr. Miranda to go to trial by overstating the likelihood of an acquittal and by failing to inform him of the mandatory 20-year minimum sentence that would apply if he were convicted at trial, notwithstanding any downward adjustment that might apply for his purportedly minor role in the offense or his family circumstances. With respect to these issues, both sides have submitted contradictory affidavits describing very different sequences of events. Mr. Brettschneider states that he urged Mr. Miranda not to go to trial and warned him of all the dangers of doing so, while Mr. Miranda, his wife, and Ms. DelRio insist that he did not. However, Mr. Miranda's own factual allegations fatally undermine any superficial credibility that might attach to either of these arguments. Mr. Miranda's supplemental memorandum concedes that the failure to call Gonzalez and Pelaez was not ineffective assistance if the decision was made pursuant to an informed trial strategy, but argues that Mr. Brettschneider

"apparently failed to even <u>consider</u> such a strategy." (Supp. Mem. at 5 (emphasis in original)).

This assertion is completely at odds with Mr. Miranda's sworn statement that Mr. Brettschneider "refused" to submit evidence from Miranda's co-defendants despite Miranda's desire to do so (Miranda 12/2/05 Aff. ¶ 6), and gives the impression that Mr. Miranda is tailoring his factual allegations to conform to what he believes to be the theory of the case most likely to result in the relief that he seeks. It is impossible for Mr. Brettschneider to have refused Mr. Miranda's request to submit evidence from Gonzalez and Pelaez at trial without considering that option. With respect to the allegation that Brettschneider failed to advise Mr. Miranda of the risks of going to trial, it is certainly the case as a general matter that such a failure may constitute a sufficient deviation from the standard of reasonableness imposed by the Sixth Amendment that it require vacatur of a defendant's conviction where it is proven to have occurred. <u>See, e.g.</u>, <u>Boria v. Keane</u>, 99 F.3d 492 (2d Cir. 1996) (directing discharge of petitioner where defense counsel failed to advise petitioner that refusal to accept plea agreement would be "suicidal"); <u>Roccisano v. Menifee</u>, 293 F.3d 51, 60 (2d Cir. 2002) (recognizing "the principle that defense counsel in a criminal case must advise his client of the merits of the government's case, of what plea counsel recommends, and of the likely results of a trial."). In this case, however, Mr. Miranda's contention that Mr. Brettschneider failed to adequately advise him of the risks he faced is inconsistent with his own factual allegations. As noted above, Miranda alleges that at one point during the pretrial phase of the underlying action, Mr. Brettschneider said in frustration, "what do you expect from me. . . . . . [sic] you had the drugs. . . . . . [sic] you drove Gonzalez around. . . . . . . [sic] I'm just a lawyer!" (Pet. at 9.) That statement unambiguously contradicts Mr. Miranda's contention that Mr. Brettschneider overstated the likelihood of acquittal at trial, and undermines the credibility of Mr. Miranda and his supporting declarants. It is hardly credible that an attorney who at one point

16

expressed frustration that his client was demanding an unrealistic result in light of the Government's strong evidence against him would have simultaneously urged Mr. Miranda to expect to be acquitted at trial. Although the quoted statement does not specifically address the question of whether Brettschneider informed Miranda of the 20-year mandatory minimum, the contradictions inherent in Mr. Miranda's allegations completely undermine his credibility with respect to that allegation; moreover, it is entirely implausible that an attorney would advise his client of the overwhelming strength of the Government's evidence against him, as the Court finds that Mr. Brettschneider did, while neglecting to mention the applicability of a severe mandatory minimum sentence. On the basis of the detailed, specific, and credible recollections contained in Mr. Brettschneider's declarations, the Court finds that Mr. Miranda's allegations are not sufficiently credible to require an evidentiary hearing as to any of his claims of ineffective assistance. See Chang, 250 F.3d at 85.

**b.      Mr. Wasserman's Alleged Ineffectiveness**

Mr. Miranda identifies several purported deficiencies in Mr. Wasserman's representation of him prior to and at his sentencing hearing, all of which are clearly frivolous. First, he argues that Wasserman improperly withdrew the motion for a new trial pursuant to Rule 33(a) without consulting Miranda because he concluded that the Court would not find the exculpatory statements in Gonzalez's affidavit credible. However, as noted above, Mr. Wasserman did not withdraw that motion; it was denied by this Court in a written opinion issued on December 3, 1996. See Miranda, 951 F. Supp. at 370-71. Miranda also asserts that Mr. Wasserman was ineffective in failing to move for a judgment of acquittal, presumably pursuant to Rule 29(c); however, Mr. Miranda fails to acknowledge that Mr. Brettschneider had made such a motion pursuant to Rule 29(a) at the close of the Government's case, which was denied by the Court. Such a motion by

Mr. Wasserman would therefore have been baseless and futile. Mr. Miranda also argues that Mr. Wasserman was ineffective at Miranda's sentencing because the letter he submitted to the Court requesting leniency because of Mr. Miranda's family situation was insufficiently "replete with facts,"[4] and because he failed to request a reduction in Mr. Miranda's sentence on the basis of his purportedly minor role in the offense. (Pet. at 10). However, Mr. Miranda acknowledges that he received the mandatory minimum sentence of 20 years' imprisonment; this Court lacked authority to impose a lesser sentence regardless of any additional arguments for leniency that Mr. Wasserman might have made. Mr. Miranda is therefore unable to demonstrate prejudice under the second Strickland prong because Mr. Wasserman obtained the best result that was legally possible for his client.

Mr. Miranda also raises several equally frivolous arguments regarding Mr. Wasserman's alleged ineffectiveness on appeal. First, he argues that Mr. Wasserman was ineffective in failing to raise the issue of Mr. Brettschneider's purported failure to move for a judgment of acquittal pursuant to Rule 29(a) at trial; however, as noted above, Mr. Brettschneider did make such a motion, so Mr. Wasserman could hardly have been ineffective in failing to raise this issue. Second, Mr. Miranda argues that Wasserman's failure to raise the issue of Miranda's family circumstances and the effect that a 20-year sentence would have on his three children was ineffective assistance. Again, because the 20-year term to which Mr. Miranda was sentenced was the mandatory minimum imposed by statute, neither this Court nor the Court of Appeals had the authority to impose a lower sentence; Mr. Wasserman did not act ineffectively in failing to raise a

---

[4]    Specifically, Mr. Miranda alleges that Mr. Wasserman did not emphasize the facts that Mr. Miranda was the sole provider for his wife and three children, that his incarceration might result in the children being placed in the custody of the Bureau for Child Welfare, or that his youngest son, eight years old at the time the petition was filed, was suffering from depression caused by being separated from his father.

futile argument.   Finally, Mr. Miranda argues that Wasserman should have sought a directed verdict of acquittal on the basis of the prosecutor's allegedly improper statement regarding the cocaine smell emitted by Gonzalez's duffel bag.   Miranda's petition asserts that "because the Attorney for the Government goaded petitioner Miranda into seeking a mistrial, and the Court of Appeals [sic] having agreed that this was the design of the Attorney for the Government, the Doctrine of Manifest Necessity must attach."   Pet. at 13.   As an initial matter, the Court of Appeals did not, as Miranda asserts, agree that the goal of the Government was to "goad" Miranda into moving for a mistrial for the purpose of re-trying him; to the contrary, as noted above, the Second Circuit held that the prosecutor's statement in summation was consistent with the evidence and was, at worst, harmless error.   <u>Miranda</u>, 1997 WL 791514, at *2.   Moreover, Mr. Wasserman <u>did</u> argue that the conviction should be reversed on the basis of the prosecutor's statement in summation regarding the smell of the duffel bag, but the Second Circuit rejected that argument. Mr. Wasserman's performance on appeal was therefore clearly not ineffective, notwithstanding the fact that his efforts were ultimately unsuccessful.

### iii.    Challenges to Sufficiency of the Evidence

In his memorandum of law submitted in October 2007, Mr. Miranda raises several challenges to the sufficiency of the Government's evidence, arguing that the evidence introduced at trial was insufficient as a matter of law to sustain convictions for the crimes with which Mr. Miranda was charged.   Though styled as a "reply" memorandum submitted pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, this memorandum raises issues entirely unrelated to those addressed in Mr. Miranda's initial petition or in the supplemental memorandum filed in 1999, and is therefore a "successive" Section 2255 motion which cannot be considered by this

Court unless Mr. Miranda obtains leave from the Second Circuit to file it.   Under the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2255,

> a prisoner may only bring a second (or "successive") motion to vacate, set aside, or
> correct a federal conviction or sentence pursuant to section 2255 if a Court of
> Appeals certifies. . . that the motion "contain[s]":
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as
> a whole, would be sufficient to establish by clear and convincing evidence that no
> reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review
> by the Supreme Court, that was previously unavailable.

Love v. Menifee, 333 F.3d 69, 72 (2d Cir. 2003) (quoting 28 U.S.C. § 2255).   Where, as here, the

petitioner files a supplemental memorandum in the course of a Section 2255 proceeding that raises

claims not asserted in the initial petition, AEDPA's "gatekeeping" provision precludes the court

from considering the additional claims.

As a general matter, when a petitioner makes a second or successive Section 2255 motion

without authorization from the appellate court, the district court may transfer the motion to the

appropriate appellate court for the purpose of seeking authorization "if it is in the interest of justice

to do so."   28 U.S.C. § 1631.   The Court declines to do so in this case because Mr. Miranda's

belated challenge to the sufficiency of the evidence was not raised on direct appeal and is clearly

frivolous in that a reasonable jury could obviously have inferred on the basis of the evidence

presented, including Agent Devine's expert testimony that the amount of cocaine in Gonzalez's

bag would emit an odor identifiable to anyone familiar with the drug, that Mr. Miranda was

actually aware of the contents of the bag.   Moreover, Mr. Miranda relies on neither newly

discovered evidence nor a new rule of constitutional law in support of his argument that the

evidence presented at trial was insufficient to sustain a conviction, but simply seeks to re-litigate

matters already decided in the underlying criminal action.   See Mallet v. Miller, 442 F. Supp. 2d

156, 157 (S.D.N.Y. 2006) (declining to transfer a second or successive § 2255 petition to the Second Circuit because "the petition is entirely without merit."); <u>Schwamborn v. United States</u>, 507 F. Supp. 2d 229, 241-42 (E.D.N.Y. 2007) (Glasser, J.) (same).   Given the litigious history of this case, related above, the observation of Justice Harlan, concurring in <u>Mackey v. United States</u>, 401 U.S. 667, 690-91 (1971) is appropriately recalled:

> It is, I believe, a matter of fundamental import that there be a visible end to the litigable aspect of the criminal process. Finality in the criminal law is an end which must always be kept in plain view.   As I have stated before, [b]oth the individual criminal defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community.   At some point, the criminal process, if it is to function at all, must turn its attention from whether a man ought properly to be incarcerated to how he is to be treated once convicted.   If law, criminal or otherwise, is worth having and enforcing, it must at some time provide a definitive answer to the question litigants present or else it never provides an answer at all.   Surely it is an unpleasant task to strip a man of his freedom and subject him to institutional restraints. But this does not mean that in so doing, we should always be halting or tentative.   No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.

(citations and quotation marks omitted).   The Court therefore shall not consider Mr. Miranda's challenges to the sufficiency of the evidence or transfer his October 2007 memorandum to the Court of Appeals for the Second Circuit for the purpose of seeking certification to pursue a successive § 2255 petition.[5]

The Court therefore finds that the parties' submissions and the record of the underlying criminal action establish that Mr. Munoz is entitled to no relief as to any of his arguments

---

[5]       Mr. Miranda remains free, of course, to submit a successive Section 2255 petition to the Court of Appeals himself.

regarding the alleged ineffectiveness of either Mr. Brettschneider or Mr. Wasserman. His Section

2255 petition is therefore dismissed pursuant to Rule 4(b) of the Rules Governing Section 2255

Proceedings.

## **CONCLUSION**

For the reasons stated above, Gustavo Miranda's petition pursuant to 28 U.S.C.

§ 2255 to vacate his conviction and sentence in the underlying criminal action, 96-CR-211 (ILG),

is hereby DISMISSED.

SO ORDERED.

Dated:        Brooklyn, New York
             June 25, 2008

_____/s/_____

I. Leo Glasser
United States Senior District Judge


Copies of the foregoing memorandum and order were electronically sent to:

Counsel for the Petitioner

Alexei M. Schacht
Nalven & Schacht
350 Fifth Avenue
Suite 1422
New York, NY 10118

Counsel for the Government

Elaine Denise Banar
United States Attorneys Office
Criminal Division
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820